## IN THE CIRCUIT COURT FOR BALTIMORE COUNTY

MAYOR AND CITY COUNCIL
OF BALTIMORE, a municipal corporation
100 Holliday Street
Room 101
Baltimore, MD 21202

and

LEXINGTON INSURANCE COMPANY      CASE No.:
as subrogee of Mayor and City Council of
Baltimore
99 High Street, Floor 23
Boston, MA 02110

         Plaintiffs

v.

ENERG TEST, LLC
3915 Benson Road
Baltimore, MD 21227

SERVE ON:
CSC-Lawyers Incorporating Service Company
7 St. Paul Street, Suite 1660
Baltimore, MD 21202

     and

**TRI-M GROUP LLC**
1001 Wilso Drive
Baltimore, MD 21233

SERVE ON:

CSC-Lawyers Incorporating Service Company
7 St. Paul Street, Suite 1660
Baltimore, MD 21202

         Defendants

13979542v.1



EXHIBIT A

## COMPLAINT AND REQUEST FOR JURY TRIAL

1. Plaintiff Mayor and City Council of Baltimore (hereinafter "the City") is a municipal corporation of the State of Maryland with a business address of 100 Holliday Street, Room 101, Baltimore, Maryland 21202.

2. Plaintiff Lexington Insurance Company ("Lexington") is a Delaware corporation approved as a surplus lines carrier in the State of Maryland and maintains its principal place of business at 99 High Street, Floor 23, Boston, Massachusetts and at all times relevant hereto provided insurance to the Mayor and City Council of Baltimore and other insureds, under policy number 084144155.

3. Defendant EnerG Test, LLC ("EnerG") is a limited liability company organized and existing under the laws of the Commonwealth of Pennsylvania and has its Maryland business address located at 3915 Benson Road, Baltimore, Maryland 21227.

4. Defendant Tri-M Group, LLC ("Tri-M") is a limited liability company organized and existing under the laws of the Commonwealth of Pennsylvania and has its Maryland business address located at 3915 Benson Road, Baltimore, Maryland 21227.

5. Upon information and belief, EnerG is an electrical testing and service organization specializing in testing capabilities and equipment servicing related to medium and high voltage electrical equipment.

6. Upon information and belief, Tri-M is an electrical contractor specializing in the repair and maintenance of medium and high voltage electrical equipment.

7. Upon information and belief, EnerG and Tri-M are related companies and share common owners, business addresses, and/or employees, such that the identity, undertakings and distinctions of the two entities will be the subject of needed discovery in this action.

8. On or about April 13, 2011 the City entered into an agreement with Tri-M to furnish labor, materials and equipment to perform work required by the City's high and medium voltage electrical systems.

9. At all times relevant hereto the City owned and/or operated the Back River Wastewater Treatment Plant at 8201 Eastern Blvd., Baltimore, Maryland, which services the residents of Baltimore City and Baltimore County (hereinafter "the plant").

10. The plant includes medium and high voltage electrical equipment that provides power to various onsite facilities.

11. The power distribution system includes incoming electricity from the public utility that is distributed through switchgear, circuit breakers, bus duct and related electrical equipment.

12. Upon information and belief, on or about January 23, 2012, the defendants performed temporary electrical repairs to equipment located at substation PSS-2 at the plant. *See Exhibit A, July 24, 2012 letter from EnerG.*

13. Upon information and belief, an oil switch known as 707-5 distributes electricity to an oil filled circuit breaker (hereinafter "OCB") that, in turn, distributes power to substation PSS-2. *Id.*

14. Upon information and belief, in or about April 2012, oil switch 707-5 was de-energized after an initial trouble call was placed by the City to the defendants and the defendants concluded that there was a line to ground fault on the secondary side bus of substation PSS-2's 35kV-480/277V transformer (hereinafter "the transformer"). *Id.*

15. On or about April 24, 2012, EngerG provided the City with a proposal to provide mineral oil to top off the transformer utilizing a Tri-M Electrician for 20 hours of labor.

16. On or about April 24, 2012 EnerG provided the City with a proposal to supply and install equipment to temporarily feed switchgear from the transformer utilizing a Tri-M Electrician for 32 hours and equipment valued at $5,693.00 for a total proposal of $8,253.00.

17. The City thereafter issued a Purchase Order to Tri-M to complete the work outlined above in the amount of $8,253.00.

18. On or about July 17, 2012, EnerG investigated the OCB after it failed to close as part of the ongoing repair efforts on the aforementioned electrical equipment. *Id.*

19. Upon information and belief, on or about July 17, 2012 the defendants determined that the OCB required repairs related to air in the hydraulic system and undertook necessary repairs. *Id.*

20. Upon information and belief, at approximately 1:00 p.m. on July 17, 2012, two employees of the defendants closed oil switch 707-5 and energized the OCB. *Id.*

21. Upon information and belief, the employees drove approximately 40 feet away from the oil switch 707-5 and heard a loud explosion and observed a small fire at the bottom of the switch. *Id.*

22. The explosion and ensuing fire caused damage to various electrical equipment and related damages.

23. The above events of July 17, 2012 were the subject of an investigation by Jose J. Espinosa of EnerG who concluded that, in his professional opinion, the cause of the catastrophic failure was the cables feeding the OCB with the damage appearing on the cable enclosure located beneath oil switch 707-5. *Id.*

24. As set forth herein, the defendants undertook and failed to properly test, inspect, and identify deficiencies with the substation, cables, OCB and/or oil switch prior to re-energizing the equipment, including the cables feeing the OCB, and caused the explosion/fire.

25. As a direct and proximate result of the acts and/or omissions of the defendants, the City suffered damage to its real and personal property, and incurred additional expenses for emergency repair, temporary electric power, diesel fuel and other incidental and consequential damages.

26. Tri-M did not have employees who were licensed architects or engineers, or professional engineers, provide services or perform work at the plant, or related to plant equipment, at any time referenced herein.

27. EnerG did not have employees who were licensed architects or engineers, or professional engineers, provide services or perform work at the plant, or related to plant equipment, at any time referenced herein.

28. Neither defendant employed licensed architects or engineers, or professional engineers, who performed any services related to any of the work described in any of the above paragraphs or in the attached exhibit.

29. Pursuant to its policy of insurance, Lexington made payments to the City in an amount of $500,003.99 and the City suffered a deductible and/or uninsured loss equal to $500,000.00 for a total damage claim of $1,000,003.99.

30. Pursuant to common law, the terms of the aforementioned insurance policy and/or by agreement between the City and Lexington, Lexington is subrogated to the rights of the City for the total amount of $500,003.99.

## COUNT I – NEGLIGENCE
### Plaintiffs v. EnerG and Tri-M

31. Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs as if fully set forth at length herein.

32. At all times relevant hereto, the defendants were negligent, careless, and/or reckless in the inspection, design, installation and/or specification of the electrical repairs detailed above such that the City was at risk of harm from an electrical explosion and/or fire.

33. The defendants had a duty to the Plaintiffs to, among other things, properly test, inspect, repair, maintain and commission the electrical equipment used in the repairs; to provide

proper and functional materials and equipment to the plant; to provide appropriate and safe and complete repairs to the plant; to ensure that neither the plant nor its employees were injured by the parts supplied and repairs completed at the plant; to allow only authorized, licensed, trained and certified individuals to provide parts and repairs to the plant; to properly supervise the individuals supplying parts and performing repairs to the plant; to properly inspect the electrical equipment for defects or deficiencies prior to re-energizing; and to comply with all standards and codes in supplying parts and performing repairs to the plant.

34. The defendants, acting by and through their employees, agents, servants and/or contractors breached their duty of care through one or more of the following negligent, reckless and/or careless acts and/or omissions:

   i. failing to adequately supervise their agents, employees, workmen, representatives, contractors, sub-contractors, servants and/or officers to ensure that the work was properly designed, specified and installed;

   ii. failing to properly inspect and evaluate the electrical equipment to confirm its ability to remain in service without risk of failure;

   iii. failing to properly specify the scope of the testing and repair work as part of performing the electrical work described herein;

   iv. failing to determine that corrective maintenance and/or replacement of electrical equipment was required to avoid a catastrophic failure;

   v. failing to perform tests on the electrical equipment described herein to ensure that its reliability and safety was not adversely affected by the faults and related equipment failures described herein;

   vi. failing to undertake routine testing while the electrical equipment described herein was de-energized to identify the need for corrective maintenance and/or repair to avoid a catastrophic failure;

   vii. failing to secure and follow the manufacturer's instructions for the inspection and testing of oil switch 707-5 and OCB;

   viii. failing to comply with NETA Acceptance Testing Specifications for Electrical Power Distribution Equipment and Systems and/or ANSI/NETA

        Standard Maintenance Testing Specifications for Electrical Power Distribution Equipment and Systems and/or NFPA 70B Recommended Practice for Electrical Equipment Maintenance;

ix.    failing to perform and/or document insulating fluids for dielectric breakdown, color, power factor, interfacial tension and/or visual condition; and/or

x.    otherwise failing to comply with industry standards during the testing, diagnosis, and repair of the electrical equipment described herein.

35. As a direct and proximate result of the defendants' negligence, careless and/or reckless conduct, more fully described above, the City suffered substantial and permanent losses and damage to their real, business and personal property, together with emergency expenses, and other incidental and consequential damages in an amount in excess of $1,000,000.00.

WHEREFORE, plaintiffs Mayor and City Council of Baltimore and Lexington Insurance Company as subrogee of Mayor and Lexington Insurance Company as subrogee of Mayor and City Council of Baltimore hereby demand judgment in their favor and against defendants EngerG Test, LLC and Tri-M Group, LLC in an amount in excess of $1,000,000.00 together with pre-judgment interest, attorney fees, delay damages and such other damages as may be properly awarded by the court.

## COUNT II – BREACH OF EXPRESS/IMPLIED CONTRACT

### Plaintiffs v. EnerG and Tri-M

36. Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs as if fully set forth at length herein.

37. Pursuant to express and/or implied contracts between EnerG and Tri-M and the City, the defendants were responsible for testing, inspecting, repairing, maintaining and commissioning the electrical equipment described herein.

-8-

13979542v.1

38.  The defendants were aware that the City was relying on them to perform all services related to the electrical work described herein in a safe and reasonable manner with all precautions taken to protect the City's property.

39.  The defendants, by and through their employees, agents, servants and/or contractors, breached their contracts by one or more of the following acts and/or omissions:

   i.  failing to adequately supervise their agents, employees, workmen, representatives, contractors, sub-contractors, servants and/or officers to ensure that the work was properly designed, specified and installed;

   ii.  failing to properly inspect and evaluate the electrical equipment to confirm its ability to remain in service without risk of failure;

   iii.  failing to properly specify the scope of the testing and repair work as part of performing the electrical work described herein;

   iv.  failing to determine that corrective maintenance and/or replacement of electrical equipment was required to avoid a catastrophic failure;

   v.  failing to perform tests on the electrical equipment described herein to ensure that its reliability and safety was not adversely affected by the faults and related equipment failures described herein;

   vi.  failing to undertake routine testing while the electrical equipment described herein was de-energized to identify the need for corrective maintenance and/or repair to avoid a catastrophic failure;

   vii.  failing to secure and follow the manufacturer's instructions for the inspection and testing of the oil switch 707-5 and OCB;

   viii.  failing to comply with NETA Acceptance Testing Specifications for Electrical Power Distribution Equipment and Systems and/or ANSI/NETA Standard Maintenance Testing Specifications for Electrical Power Distribution Equipment and Systems and/or NFPA 70B Recommended Practice for Electrical Equipment Maintenance;

   ix.  failing to perform and/or document insulating fluids for dielectric breakdown, color, power factor, interfacial tension and/or visual condition; and/or

   x.  otherwise failing to comply with industry standards during the testing, diagnosis, and repair of the electrical equipment described herein.

13979542v.1

40. As a direct and proximate result of the defendants' breach of contract, more fully described above, the City suffered substantial and permanent losses and damage to their real, business and personal property, together with emergency expenses, and other incidental and consequential damages in an amount in excess of $1,000,000.00.

WHEREFORE, plaintiff Mayor and City Council of Baltimore and Lexington Insurance Company as subrogee of Mayor and City Council of Baltimore hereby demand judgment in their favor and against defendants EngerG Test, LLC and Tri-M Group LLC in an amount in excess of $1,000,000.00 together with pre-judgment interest, attorney fees, delay damages and such other damages as may be properly awarded by the court.

## COUNT III – BREACH OF EXPRESS AND/OR IMPLIED WARRANTIES
### Plaintiffs v. EnerG and Tri-M

41. Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs as if fully set forth at length herein.

42. The defendants agreed to inspect, test, maintain, inspect, repair and/or commission the electrical equipment described herein in accordance with industry standards and practices.

43. Pursuant to the relationship of the parties and duties undertaken by defendants, the defendants were responsible for inspecting, testing, maintaining, repairing and/or commissioning the electrical equipment described herein in the context of their work and to take all necessary steps to ensure that the electrical equipment was safe, free from defect and would not catastrophically fail.

44. The defendants expressly and/or impliedly warranted that the electrical work would be properly performed, including the identification and/or correction of any conditions that cause the electrical equipment to be subject to catastrophic failure or otherwise cause a fire and explosion hazard as described herein.

45. The defendants were aware that the City was relying on them to provide the aforementioned services in accordance with industry standards, manufacturer instructions, and in a good and workmanlike fashion so that the electrical equipment would not fail catastrophically and that their failure to do so would result in significant damages to the City's property and potential personal injuries to employees, business guests and/or visitors.

46. The defendants expressly and/or impliedly warranted that the electrical equipment and electrical work described herein was reasonably fit for the use intended and was merchantable for the general purpose for which it was provided, when in fact, the equipment and work was not reasonably fit for its intended purpose and was not of merchantable quality at the time it left the hands of the defendants.

47. The defendants breached the above-referenced expressed and/or implied warranties by, *inter alia*, supplying equipment and/or performing work that was not reasonably fit for the purpose intended and was not of merchantable quality as detailed herein.

48. As a direct and proximate result of the defendants' breaches, more fully described above, the City suffered substantial and permanent losses and damage to their real, business and personal property, together with emergency expenses, and other incidental and consequential damages in an amount in excess of $1,000,000.00.

-11-
13979542v.1

WHEREFORE, plaintiff Mayor and City Council of Baltimore and Lexington Insurance Company as subrogee of Mayor and City Council of Baltimore hereby demand judgment in its favor and against defendants EngerG Test, LLC and Trim-M Group, LLC in an amount in excess of $1,000,000.00 together with pre-judgment interest, attorney fees, delay damages and such other damages as may be properly awarded by the court.

                                              /s/ *signature*

ROBERT D. ANBINDER
Attorney at Law
P.O. Box 65354
Baltimore, Maryland 21209
(410) 916-7469
rdaesq@verizon.net

Attorney for Plaintiffs

## JURY DEMAND

Plaintiff respectfully demands a trial by jury on all issues.

                                                    /s/ _____
                                                    ROBERT D. ANBINDER
                                                    Attorney for Plaintiff

13979542v.1